IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


Tammie L. Williams, et al.,          :

        Plaintiffs,                   :

        v.                            :          Case No. 2:08-cv-910

                                      :

Bausch & Lomb Company, et al.,              JUDGE SMITH

                                      :

        Defendants.                   :


<u>OPINION AND ORDER</u>

        This case is currently before the Court on the motion to
dismiss pursuant to Rule 12(b)(2) filed by defendants David G.
Callanan, M.D. and Texas Retina Associates (TRA).  The motion has
been fully briefed.  For the following reasons, the motion to
dismiss will be granted.

I.

        This personal injury case arises from the following facts as
alleged in the complaint.  In May 2001, Ms. Williams agreed to
participate in a clinical research study sponsored by defendant
Bausch & Lomb.  Complaint at ¶12.  As a result, Dr. Callanan
implanted a retisert intravitreal fluocinolone acetonide insert
into Ms. Williams' right eye.  <u>Id</u>. at ¶9.  This implant was
designed to release an anti-inflammatory drug to reduce the
swelling of certain eye tissue.  <u>Id</u>. at ¶14.  At the time of this
procedure, Dr. Callanan worked for TRA.  <u>Id</u>. at ¶10.  The implant
was manufactured by Bausch & Lomb.  <u>Id</u>. at ¶7.  In October 2006,
while Ms. Williams was living in Columbus, the implant broke and
separated in her eye causing pain and blurred vision.  <u>Id</u>. at
¶21.  The implant was surgically removed and Ms. Williams

subsequently suffered total vision loss and other difficulties. Id. at ¶23.

Dr. Callanan and TRA have moved to dismiss the complaint, asserting that none of the provisions of Ohio's long-arm statute, R.C. §2307.382(A), have been met. Further, these defendants contend that the exercise of personal jurisdiction in this instance would offend the notion of due process because they have not had sufficient contacts with the State of Ohio and could not reasonably anticipate being haled into court here.

In response, the Williamses admit that Dr. Callanan performed the surgery in Texas but claim that specific personal jurisdiction exists here because Ms. Williams' injury occurred while she was living in Ohio and that her injury therefore arose out of defendants' contacts with Ohio. The crux of the Williamses' response, however, is that because defendant Bausch & Lomb placed the implant at issue into worldwide commerce, personal jurisdiction extends to Dr. Callanan and TRA as agents of Bausch & Lomb. According to the Williamses, Dr. Callanan was an agent for both TRA and Bausch & Lomb based on the doctrines of apparent authority or agency by estoppel. Finally, the Williamses argue that they have asserted "pendant state claims which further confer jurisdiction to this court."

In reply, Dr. Callanan and Bausch & Lomb contend that the Williamses have failed to make a prima facie case of personal jurisdiction because they have completely ignored the requirements of Ohio's long-arm statute and the due process clause. They argue that the Williamses have instead offered a flawed agency theory in an attempt to tie Dr. Callanan and TRA to the alleged tortious conduct of Bausch & Lomb. Further, Dr. Callanan and TRA assert that any alleged "after-the-fact 'contacts'" and the Williams' own unilateral activity cannot support a finding of specific personal jurisdiction here. Finally, they assert that the Williams' "pendant state claims" do

not justify the exercise of personal jurisdiction.

II.

When a motion to dismiss for lack of personal jurisdiction is filed, the plaintiffs have the burden of establishing personal jurisdiction over a defendant. Neogen Corp v. Neo Gen Screening, Inc., 282 F.3d 883, 887 (6th Cir. 2002); Theunissen v. Matthews, 935 F.2d 1454 (6th Cir. 1991). When no hearing is conducted, the Court must consider the pleadings and affidavits in the light most favorable to the plaintiff. Intera Corp. v. Henderson, 428 F.3d 605, 614 (6th Cir. 2005). Further, the plaintiff need only make a prima facie showing of jurisdiction. Compuserve, Inc. v. Patterson, 89 F.3d 1257, 1262 (6th Cir. 1996).

In a diversity suit, personal jurisdiction over a defendant is determined by the law of the forum state. In-Flight Devices Corporation v. Van Dusen Air, Inc., 466 F.2d 220, 224 (6th Cir. 1972). A federal court may exercise personal jurisdiction only if the defendant is amenable to service under the forum state's long-arm statute and if the exercise of personal jurisdiction does not offend a defendant's right to due process. See Bird v. Parsons, 289 F.3d 865, 871 (6th Cir. 2002); Calphalon Corp. v. Rowlette, 228 F.3d 718 (6th Cir. 2000). In Ohio, the long-arm statute does not reach as far as due process permits so an analysis of both the statute and federal due process is required. Cole v. Mileti, 133 F.3d 433, 436 (6th Cir. 1998).

When jurisdiction is founded on the long-arm statute, the cause of action must arise from at least one of the criteria set forth in the statute. These criteria include transacting business and various scenarios of causing tortious injury in Ohio. See O.R.C. 2307.382(A).

In order to satisfy due process requirements, a defendant must have certain "minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Youn v. Track,

3

Inc., 324 F.3d 409, 417 (6th Cir. 2002) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).  Minimum contacts exist when "the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp v. Woodson, 444 U.S. 286, 297 (1980).  Further, it is necessary that the defendant "purposefully avail himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws."  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985).

The Sixth Circuit utilizes a three-part test for determining whether the particular circumstances in any case provide sufficient contact between a non-resident defendant and the forum state to support the exercise of personal jurisdiction:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state.  Second, the cause of action must arise from the defendant's activities there.  Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

Id.  (quoting Southern Machine Co. v. Mohasco Industries, Inc., 401 F.2d 374 (6th Cir. 1968).  Each criterion represents an independent requirement, and failure to meet any one of the three means that personal jurisdiction may not be invoked.  LAK, Inc. v. Deer Creek Enterprises, 885 F.2d 1293 (6th Cir. 1989).

The first step of the three part analysis enunciated in Southern Machine requires an inquiry into whether a defendant has acted or caused consequences within the forum state.  The "purposeful availment" requirement "ensures that a defendant will not be haled into a jurisdiction as a result of 'random,' 'fortuitous,' or 'attenuated' contacts or of the 'unilateral

4

activity of another party or third person." <u>Third National Bank in Nashville v. WEDGE Group, Inc.</u>, 882 F.2d 1087 (6th Cir. 1989)(quoting <u>Burger King</u>, 471 U.S. at 475). In assessing a defendant's contacts with the forum state, "'[i]t is the 'quality of the contacts,' and not their number or status, that determines whether they amount to purposeful availment." <u>Reynolds v. International Amateur Athletic Federation</u>, 23 F.3d 1110, 1119 (6th Cir. 1994).

The second part of the <u>Southern Machine</u> test requires an analysis of whether the plaintiff's cause of action arises out of or is related to the defendant's contacts with the forum state. "If a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts." <u>Bird</u>, 289 F.3d at 875 (quoting <u>Compuserve, Inc.</u>, 89 F.3d at 1267).

The third part of the Southern Machine test requires inquiry into whether a defendant's conduct establishes a "...substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." <u>Southern Machine</u>, 401 F.2d at 381. This analysis requires a determination whether the Court's exercise of jurisdiction would offend "traditional notions of fair play and substantial justice," <u>International Shoe</u>, 326 U.S. at 316, and whether the defendant's conduct relating to the forum was such that he should reasonably anticipate being haled into court here. <u>World-Wide Volkswagen</u>, 444 U.S. at 297. In reaching the decision on fair play and substantial justice, the court must consider such factors as the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolutions of controversies. <u>Theunissen</u>, 935 F.2d at 1462 (citing <u>Asahi Metal Industry Co. v. Superior Court of California</u>, 480 U.S. 102 (1987). When the first two elements of the <u>Southern Machine</u> test

have been met, an inference arises that the third is also present.  <u>Theunissen</u>, 935 F.2d at 1461.

When examining the limits of personal jurisdiction, a distinction is made between "general" jurisdiction and "specific" jurisdiction."  General personal jurisdiction exists where a defendant's contacts with the forum state are so "continuous and systematic" that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state.  Specific personal jurisdiction exists where the claims in a case arise from or relate to a defendant's contacts with the forum state.  <u>Intera Corp.</u>, 428 F.3d at 616.  It is with these standards in mind that the motion to dismiss for lack of personal jurisdiction will be decided.

III.

The affidavits submitted by defendants in support of their motion to dismiss set forth the following.  According to the affidavit of Dr. Callanan, he is currently and has been for fifteen years a resident of Texas.  Affidavit of David G. Callanan, M.D., ¶2.  He currently maintains a medical practice in Texas and has practiced medicine there for fifteen years.  <u>Id</u>. at ¶6.  He has never been a resident of Ohio and has never had a license to practice medicine in Ohio.  <u>Id</u>. at ¶¶ 3 and 6.  On May 23, 2001, Dr. Callanan implanted the intravitreal fluocinolone acetonide implant into Ms. Williams' right eye.  <u>Id</u>. at ¶4.  This procedure was performed in Texas.  <u>Id</u>.  He rendered follow-up medical care to Ms. Williams in Texas but has not rendered any medical care to her in Ohio.  <u>Id</u>.  According to Dr. Callanan's billing records, Ms. Williams was a resident of Texas at the time he rendered medical care and treatment to her.  <u>Id</u>. at ¶5.  The remainder of Dr. Callanan's affidavit sets forth his specific denial of any activity set forth in Ohio's long-arm statute.

Jefferey T. Brockette, the chief executive officer of

defendant TRA, also submitted an affidavit. According to Mr. Brockette's affidavit, TRA is a professional association existing under the laws of Texas with a principal place of business in Dallas and various offices throughout the state. Affidavit of Jefferey T. Brockett, ¶3. TRA does not maintain a principal place of business or any business in Ohio nor has it ever engaged in business within Ohio. Id. at ¶4. TRA does not maintain a registered agent for service of process in Ohio. Id. at ¶5. The remainder of Mr. Brockette's affidavit asserts that TRA does not engage in any other activity which could subject it to personal jurisdiction under Ohio's long-arm statute.

In response, the Williamses have each submitted an affidavit. The focus of both affidavits is the belief that Dr. Callanan and Bausch & Lomb were "one entity." Affidavit of Tammie L. Williams ¶10, Affidavit of Charles R. Williams ¶22. With respect to any activity in Ohio by Dr. Callanan or TRA, Mr. and Ms. Williams state that, after the breakage, Dr. Callanan consulted with them and doctors in Ohio via email and phone calls regarding Ms. Williams' treatment and condition. Affidavit of Tammie L. Williams ¶¶8 and 9, Affidavit of Charles R. Williams ¶¶20 and 21. Calls and e-mails to Dr. Callanan were initiated by the Williamses and doctors in Ohio to Dr. Callanan in Texas. Id. Ms. Williams' post-operative notes and records were sent to Dr. Callanan in Texas by her doctors in Ohio. Id.

Based on these affidavits, the Court finds that the Williamses have failed to allege facts sufficient to satisfy Ohio's long-arm statute. Ohio's only connection to this case is the fact that the Williamses were living in Ohio when the implant ruptured, having chosen to move to Ohio sometime after Dr. Callanan performed the implant procedure. A plaintiff's merely living in Ohio at the time of an alleged injury, without more, is not one of the acts set forth in the Ohio long-arm statute supporting the exercise of personal jurisdiction. Moreover, the

7

initiation by plaintiffs and doctors in Ohio of calls and emails to Dr. Callanan in Texas further underscores the defendants' complete lack of any Ohio presence or activities.

Significantly, the Williamses have not even attempted to suggest what particular prong of the Ohio long-arm statute would apply here. At most, the Williamses claim, without explanation or support that, "[t]he cases have held that mere injury by the Defendants' product in the forum state is enough to confer jurisdiction to the court." Plaintiffs' Response, p. 7. However, the Williamses have in no way connected this assertion to any prong of Ohio's long-arm statute. While they may be claiming tortious injury, the Williamses have not provided any evidence that such injury occurred under any of the scenarios set out in R.C. §2307.382(A)(3)-(7).

Instead, the Williamses seem to have focused solely on what the Court only can surmise is a due process argument arising from Bausch & Lomb's placement of a product into interstate commerce. However, because the Ohio long-arm statute is not satisfied, the Court is not required to analyze whether the Due Process Clause presents a limitation on the exercise of personal jurisdiction. Brunner v. Hampson, 441 F.3d 457, 467 (6th Cir. 2006) (citing Hall v Tucker, 161 Ohio App.3d 245 (2005)). Briefly, however, it seems clear that exercising jurisdiction over Dr. Callanan and RTA here would not comport with due process. The defendants' affidavits support the conclusion that neither Dr. Callanan nor RTA purposefully availed themselves of the privilege of acting in Ohio. The Williamses have presented no evidence to support a conclusion that these defendants would ever anticipate being haled into court in Ohio under the facts of this case. The Williamses' attempts to overcome this fact based on agency theories or the presence of state law claims are unpersuasive. There is simply no evidence to support any agency theory. Consequently, the Williamses have failed to make a prima facie

showing and the motion to dismiss for lack of personal jurisdiction will be granted.

IV.

For the foregoing reasons, the motion to dismiss for lack of personal jurisdiction (#22) is granted. The claims against defendants Dr. David G. Callanan, M.D. and Texas Retina Associates are DISMISSED WITHOUT PREJUDICE.

/s/ George C. Smith
George C. Smith
United States District Judge